**Golden Crest Enterprises, Inc.**

3321 W. Aire Libre Ave

Phoenix, Arizona 85053

johngilleland@hotmail.com

___ FILED        ___ LODGED
___ RECEIVED     ___ COPY

MAR 19 2014

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY                    DEPUTY

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Charrie Sternberger, | ) | No. 2:13-cv-02370-JAT |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| Vs. | ) | **DEFENDANT'S RESPONSE** |
| | ) | |
| | ) | |
| Jonathan Gilleland and Kari Gilleland | ) | |
| and Golden Crest Enterprises, Inc. | ) | |
| | ) | |
| Defendants, | ) | |
| _____ | ) | |

### NATURE OF THE CASE

1. The Plaintiff Charrie Sternberger's claims are absolutely false and hold no cause of action. She was never retaliated against nor was she ever terminated, she abandoned her job. She only worked one and a half days for a total of 10.75 hours. Her first day was on Friday April 26, 2013 and her last day was on Monday April 29, 2013. The office was closed on Saturday April 27, 2013 and on Sunday April 28, 2013. On her second day of work the Plaintiff left the office at 1:00pm without saying anything to anyone and never returned. Within the 10.75 hours the Plaintiff worked for the Defendant she did not report or let anyone know of any type of offensive or harassing behavior taking place. She did however send an email later in the

offensive or harassing behavior taking place. She did however send an email later in the afternoon of April 29, 2013 after she abandoned her job. In the email she requested that someone contact her about a sexual harassment complaint. She was contacted by telephone within the hour and was scheduled to come in first thing the next morning Tuesday April 30, 2013 at 9:00am to address her concerns with management. The Plaintiff never showed up for her scheduled meeting with management to follow through with her complaint nor did she ever return to work again. The Plaintiff never made any attempt to reschedule her meeting with management nor did she ever contact or set foot into the office again. Instead the Plaintiff waited for three months and then filed her initial charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") in July 2013.

### JURISDICTION AND VENUE

2.  True

3.  True

4.   True

5.  No comment

6.  The EEOC issued a right to sue to the Plaintiff prior to receiving or reviewing the Defendant's statement of position or any supporting documents. The Defendant received a notice from the EEOC requesting a Statement of Position along with copies of any supporting documentation within 30 days from the notice dated August 20, 2013. On Sept 13, 2013 only 24 days from the date of the EEOC's request a right to sue was issued. It is impossible that the EEOC would have reviewed the Defendant's response or any supporting documentation because it was not mailed out until day 26. **(See Documents A)**

7.  No comment

8.  No Comment

9.  True

10. True

11. Denied. Golden Crest Enterprises, Inc. was a registered Delaware corporation that was established on October 10, 2012 and dissolved due to lack of profitability on September 27, 2013. **(See document B)**

12. No comment

13. Denied in part. Defendant has never done business as Legal Consumer Aid. Jonathan Gilleland

and Kari Gilleland were only doing business as Golden Crest Enterprises and were located at 12436 North 28th Dr, Phoenix, Arizona 85029.

## GENERAL ALLEGATIONS

14. Denied. The Plaintiff worked for such a brief time period she apparently did not have a comprehensive understanding of her position. The Plaintiff was not hired as a Customer Service Representative. No individuals within the organization held that title nor did anyone in *the office deal with existing customers. The Plaintiff was brought on as an Independent* contractor for a position that held the title of "Qualifier" on April 26, 2013. The Plaintiff's job as a qualifier involved asking survey question. At the end of the survey the qualifier would then transfer the individuals that met specific criteria to a "closer" also referred to as a "Senior Account Manager". If the call was properly transferred and met the correct criteria based on the survey then the qualifier would get a commission for that transfer.

15. Denied. Plaintiff signed a contract agreeing to be paid according to our "Qualifier" commission plan. All qualifiers are paid either straight commission or an attendance bonus, whichever is greater. The two compensation plans were as follows;

**Commission Pay:** Qualifiers were paid a commission of $50.00 for each call that they *transferred to one of our "closers" or "Senior Account Managers" that met the correct criteria* based on the survey questions.

**Attendance Bonus:** We offered an attendance bonus for our agents to encourage them to work our entire shift. The "Attendance Bonus" was $35.00 for each day an agent was on time for the beginning of our shift and worked for that entire day. We worked Monday – Friday so there is a maximum potential of $175.00 in attendance bonuses to be earned in one week.

**(See Document C page 7)**

16. Denied. Ben Gates was not an employee. He was an Independent Contractor brought on for a position we referred to as a "Closer". **(See Document D)**

17. Denied. Ben Gates was not a supervisor and did not hold authority over anyone within the organization. Jonathan Gilleland managed the Plaintiff in her work as a Qualifier. Ben Gates was a "Closer". When a "Closer" is speaking on the phones with an individual, they often *introduce themselves as a "Senior Accounts Manager". The title "Senior Accounts Manager"* in no way establishes them as being an internal manager for the company. It refers to their authority to manage products and services offered. The Plaintiff worked for such a brief time period she apparently did not have a comprehensive knowledge of the organization's individuals or their responsibilities within the organization.

18. The plaintiff worked a total of 10.75 hours. In this time worked the Plaintiff did not let anyone know of any unwanted sexual advances or offensive behavior taking place. **(See Document E)**

19. While working for Defendant the Plaintiff at no point let anyone know of any offensive or harassing behavior taking place. After the Plaintiff abandoned her job and was called back in response to her email, she explained a conversation that occurred outside of the building during a break time that she found to be offensive. The Plaintiff never at any point disclosed to the Defendant any allegations that Ben Gates was making direct sexual advances to her. The Plaintiff's allegations of direct sexual advances from Ben Gates are something that she only stated to the EEOC in her complaint and were never at any point mentioned to the Defendant.

20. Denied. Plaintiff did not report anything to Kari Gilleland. Plaintiff was not laughed at.

21. Denied. Plaintiff did not report anything to Kari Gilleland. Kari never said "that is just the way (Gates) is."

22. *Plaintiff did not report anything to Kari Gilleland therefore there was no complaint for Kari Gilleland to investigate or protect the Plaintiff against.*

23. Denied. The Plaintiff did not make a direct report to Kari Gilleland anytime within her 10.75 hours worked. Kari Gilleland worked in accounting and was not the ultimate authority at the facility nor was she Gates' supervisor. Jonathan Gilleland was the ultimate authority and was the supervisor over everyone in the building. The Plaintiff erroneously sent an email to a client which was forwarded to our office for an explanation, as the client was not involved in this matter.

24. In response to the email, the Defendant Kari Gilleland immediately called the Plaintiff Charrie Sternberger to find out what had happened. The Plaintiff explained to the Defendant that there was an alleged conversation that occurred earlier that day in the parking when agents where outside for a cigarette break. The Plaintiff expressed that she found the conversation to be offensive. The Defendant asked the Plaintiff who all was involved in this conversation and the Plaintiff named three individuals; Ben Gates, Mary Garvey, and Sheina Wolf. The Defendant *told the Plaintiff that she will need to come in and meet with her supervisor Jonathan Gilleland to file a complaint.* The Defendant scheduled the Plaintiff to meet with her supervisor Jonathan Gilleland first thing in the morning the following day at 9:00am to address her concerns. The Plaintiff agreed and was scheduled to meet with management on Tuesday April 30, 2013 at 9:00am.

25. Denied. Plaintiff was not instructed to stay away from work. On the contrary she was instructed to come into work at 9:00am on April 30, 2013 and submit her harassment complaint to her manager Jonathan Gilleland. Charrie did not show up for that meeting or call in to reschedule it. Charrie never contacted or stepped foot into the office again. The company heard nothing from Charrie again until she filed a complaint with the EEOC in July.

26. Denied. On the contrary the Plaintiff was instructed to return to work and meet with management to file her complaint but she never showed up. The Plaintiff was never instructed

to stay away from the office for two days while an investigation occurred. In fact an investigation was conducted and documented the same day that the Plaintiff's email was received. On Monday April 29, 2013 the individuals named by the Plaintiff in her telephone conversation with the Defendant were each individually pulled into the office and questioned regarding this conversation that had happened in front of the building on a break time earlier that day. Per company protocol individuals Ben Gates, Mary Garvey, and Shenia Wolf were all required to write statements outlining their side of the story. The Plaintiff's participation and follow through of an initial report was the only missing element preventing the company from completing an investigation and determining a necessary course of action. Despite the Plaintiffs participation, everyone within the organization was warned that inappropriate conversations will not be tolerated even outside of the building or on break times. Everyone was reminded that offences of this nature are grounds for termination of their work arrangements. All individuals directly named by the Plaintiff were also informed that further action may be taken pending management's meeting with the Plaintiff in the morning. **(See document F)**
**(See document G)**

27. Denied. There was no suspension. The Plaintiff was instructed to come into work.

28. Denied. Plaintiff never returned to work and never met with Kari. Multiple witnesses can confirm this fact. The office floor plan was one open room with approximately 15 agents. It would be impossible for anyone to show up for work and not be noticed.

29. Denied. Plaintiff never returned to work nor did she meet with Kari. There was never any paperwork presented for the Plaintiff to sign. This paperwork does not exist and is a totally untrue fabrication made by the Plaintiff.

30. Denied

31. Denied

32. Denied. Plaintiff never returned to work after her second day. This is a totally untrue fabrication made by the Plaintiff. Multiple witnesses can disprove this claim.

33. Denied

34. Because Charrie never returned to work again she would have no way of knowing who worked and who didn't.

35. Denied

36. Denied. The Plaintiff was never terminated by anyone, she abandoned her job. Her last day worked was not April 22, 2013. The plaintiff did not even come in to submit an application until April 25, 2013. **(See document  H)**

37. The plaintiff signed a contract agreeing to the companies 14 day probation period. If any agent does not complete our 14 day probation period they were to be paid commission only with no opportunity for an attendance bonus. Charrie worked a total of one and a half days which clearly made her ineligible for the attendance bonus. Charrie produced zero qualified transfers and therefore earned zero commissions. **(See document C page 9)**

## COUNT ONE
## <u>SEX DISCRIMINATION</u>

38. No comment

39. Denied

40. No comment

41. No comment

42. True

43. Denied

    a. Plaintiff was treated the same as everyone else.
    b. The work environment was not hostile.

44. Denied. Plaintiff was treated the same as anyone else.

45. Denied

46. Denied

47. Denied

48. Denied

49. Denied

50. No comment

WHEREFORE, Defendant respectfully requests that judgment dismiss Count One Sexual Discrimination for the following reasons.

A.  The Plaintiff has experienced no loss of back pay, front pay, or loss of compensation and benefits. The Plaintiff worked one and a half days and per her signed contract agreed to be paid commission only. The plaintiff had no commissions in the time worked and therefore has no compensations due.

B.  There are no economic or non-economic damages the defendants are responsible for in this matter.

C.  There are no special, incidental, and consequential damages the defendants are responsible for in this matter.

D.  There are no punitive and exemplary damages the defendants are responsible for in this matter.

E.  The Plaintiff should not be awarded pre-judgment and post-judgment interest.

F.  The Plaintiff should not be awarded attorneys' fees and costs.

G.  No comment

## COUNT TWO
## <u>RETALIATION</u>

51.  No comment

52.  No comment

53.  Denied

54.  Denied. There was no retaliation to Plaintiff for making a complaint. Plaintiff never made a complaint of any kind until after she abandoned the job never to return.

A. Plaintiff was not in any way treated less favorably than similarly situated male employees.

B. Plaintiff didn't even work two full days and her schedule was never changed in that time.

C. Plaintiff was held to the same standard and evaluation as anyone else.

D. Plaintiff was never terminated. She abandoned her job.

55.  Denied.

56.  Denied

57.  Denied

58. Denied

59. Denied

60. Denied. There has been no indifference with the Plaintiff's federally protected rights.

WHEREFORE, Defendant respectfully requests that judgment dismiss Count Two Retaliation for the following reasons.

A. The Plaintiff has experienced no loss of back pay, front pay, or loss of compensation and benefits. The Plaintiff worked one and a half days and per her signed contract agreed to be paid commission only. The plaintiff had no commissions in the time worked and therefore has no compensation due.

B. There are no economic or non-economic damages the defendants are responsible for in this matter.

C. There are no special, incidental, and consequential damages the defendants are responsible for in this matter.

D. There are no punitive and exemplary damages the defendants are responsible for in this matter.

E. I ask that the Plaintiff not be awarded pre-judgment and post-judgment interest.

F. I ask that the Plaintiff not be awarded attorneys' fees and costs.

G. No comment

## COUNT THREE
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

61. No comment

62. Denied. The Plaintiff is fabricating all of these claims. Plaintiff never complained to anyone about anything until after abandoning the job. No one ever laughed at the Plaintiff for any reason. The Plaintiff was never suspended from work. Plaintiff was never asked to sign documents potentially waiving her rights. Plaintiff was never terminated. Plaintiff was instructed to return for work but she instead abandoned the job. The Plaintiff refused to even participate in the completion of filling her harassment complaint with the Defendant. After giving the Defendant zero opportunity to even complete an investigation or take the appropriate actions, she decided to just file a complaint to the EEOC as well as file this lawsuit.

63. Denied

64. Denied

WHEREFORE, Defendant respectfully requests that judgment dismiss Count Three Intentional Infliction of Emotional Distress for the following reasons.

A.  The Plaintiff has experienced no general damages at the fault of the Defendants.

B.  There are no special, incidental, and consequential damages the defendants are responsible for in this matter.

C.  There are no punitive and exemplary damages the defendants are responsible for in this matter.

D.  I ask that the Plaintiff not be awarded pre-judgment and post-judgment interest.

E.  No comment

## COUNT FOUR
## NONPAYMENT OF WAGES

65.  No comment

66.  Denied. Plaintiff signed a contract agreeing to be paid commission only. Plaintiff earned no commissions. **(See document C pages 7 and 9)**

67.  Denied  **(See document C pages 7 and 9)**

68.  Denied. There are no unpaid wages owed to the Plaintiff.

69.  Denied

WHEREFORE, Defendant respectfully requests that judgment dismiss Count Four Nonpayment of Wages for the following reasons.

A.  Defendants paid Plaintiff as agreed per the contract the Plaintiff signed prior to taking the position.

B.  The Plaintiff should not be awarded treble the amount. There are zero commissions owed to Plaintiff.

C.  Plaintiff should not be awarded attorneys' fees.

D.  Plaintiff should not be awarded costs and expenses incurred in this action.

E.  I ask that the Plaintiff not be awarded pre-judgment interest of any amount.

F.  I ask that the Plaintiff not be awarded post-judgment interest of any amount.

G.  No comment

## COUNT FIVE

## <u>DECLARITORY JUDGEMENT</u>

70.  No comment

71.  No comment

72.  No comment

73.  No comment

    a.  Denied. Plaintiff was an Independent Contractor not an employee. **(See Document I)**

    b.  No comment

    c.  Denied. Plaintiff was brought on as an Independent Contractor not an employee.

    d.  True

    e.  Denied. Defendants, Officers, or Agents never discriminated against Plaintiff.

    f.  Denied. Plaintiff never reported improper sexual harassment and gender-based discrimination to Defendants prior to walking out on the job never to return.

    g. *Denied. Defendants, Officers, or Agents never retaliated against Plaintiff* nor did they take negative actions towards Plaintiff's work arrangement. Plaintiff was never terminated.

    h.  Denied

    i.  Denied

    j.  Denied

    k.  Denied. The Plaintiff has fabricated extreme and outrageous claims.

    l.  Denied

    m.  Denied

n. Denied

o. Denied. The Plaintiff agreed to be paid commission only per her signed contract. Plaintiff had zero commissions. **(See document C pages 7 and 9)**

p. Denied

q. Denied

r. Denied

74. Denied

75. No comment

A. Defendant's acts and practices have not been in violation of Arizona or Federal Law.

B. Plaintiff should not be awarded her attorneys' fees or the other cost and expenses of the litigation.

C. No comment

Dated: March 19, 2014

Respectfully submitted,

**Golden Crest Enterprises, Inc.**