**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Charrie Sternberger, | No. CV-13-02370-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Jonathan Gilleland, et al., | |
| Defendants. | |

Pending before the Court is Defendant Jonathan Gilleland ("Mr. Gilleland")'s Motion to Dismiss (Doc. 10) the claims against him in Plaintiff Charrie Sternberger ("Sternberger")'s Complaint (Doc. 1). Sternberger filed a Response (Doc. 12), but Mr. Gilleland has not replied. Also pending before the Court is Sternberger's Motion to Strike (Doc. 20) Defendant Golden Crest Enterprises, Inc. ("Golden Crest")'s Answer (Doc. 15) to the Complaint. Sternberger has not responded. The Court now rules on the motions.

## I.   BACKGROUND[1]

On or about April 16, 2013, Sternberger began working for Golden Crest, a corporation wholly owned by Defendants John Gilleland and Carrie Gilleland ("Ms. Gilleland") (collectively, "Defendants"). (Compl., Doc. 1 ¶¶ 13–14). Defendants agreed to pay Sternberger $200.00 in wages per week for her work, plus $50.00 in commission

---

[1] For the purposes of a Rule 12(b)(6) motion, "a court must construe the complaint in the light most favorable to the plaintiff and must accept all well-pleaded factual allegations as true." *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000).

for each client she signed for Golden Crest. (*Id.* ¶ 15). During Sternberger's first week at Golden Crest, her supervisor, Ben Gates ("Gates"), began subjecting Sternberger to a daily pattern of unwanted sexual advances and sexual statements that continued for the duration of her employment. (*Id.* ¶¶ 16–18). These statements included Gates indicating to Sternberger daily that he wanted to have sexual intercourse with her. (*Id.* ¶ 19). Sternberger subsequently reported Gates' behavior to Ms. Gilleland, who Sternberger understood to be the "ultimate authority" at the Golden Crest's facility. (*Id.* ¶¶ 20, 23). Ms. Gilleland responded to Sternberger's complaint by laughing at Sternberger and stating, "That's just the way [Gates] is." (*Id.* ¶¶ 20–21). Ms. Gilleland also did nothing to investigate the complaint or protect Sternberger from further harassment. (*Id.* ¶ 22).

After her complaint to Ms. Gilleland proved fruitless, Sternberger submitted another complaint through Defendants' web site. (*Id.* ¶ 23). In response to this submission, Ms. Gilleland promised Sternberger that she would speak to Mr. Gilleland about the harassment and instructed Sternberger to stay away from work for two days, during which Defendants claimed an investigation occurred. (*Id.* ¶¶ 24–26). During this suspension, Defendants denied Sternberger the opportunity to work or earn any commission while allowing Gates to continue to working as usual. (*Id.* ¶ 27).

After the two days passed, Defendants permitted Sternberger to return to work, but Ms. Gilleland required that Sternberger first meet with her. (*Id.* ¶ 28). At this meeting, Ms. Gilleland presented paperwork to Sternberger for her to sign. (*Id.* ¶ 29). However, when Sternberger attempted to read the documents before signing them, Ms. Gilleland took them away. (*Id.*). Ms. Gilleland refused to allow Sternberger to read them before she signed them. (*Id.*). When Sternberger asked what the documents were, Ms. Gilleland responded that they were to limit Defendants' liability for sexual harassment. (*Id.* ¶ 30). Sternberger refused to sign the documents without reading them. (*Id.* ¶ 31). Because of this, Defendants sent Sternberger home, refusing to allow her to work and earn commissions that day. (*Id.*).

Sternberger returned to Golden Crest the following day and continued working for

Defendants for approximately two weeks. (*Id.* ¶ 32). However, on every workday during those two weeks, Defendants requested that Sternberger sign the liability waiver paperwork and every day Sternberger refused. (*Id.* ¶ 33). After each refusal, Defendants consistently sent Sternberger home from work, denying her opportunities to earn commissions for the remainder of each day. (*Id.* ¶¶ 33, 35). Defendants permitted other employees of Golden Crest who did not make sexual harassment complaints to continue to work and earn commissions per their usual schedules. (*Id.* ¶ 34). At the end of this two-week period, Defendants terminated Sternberger's employment with Golden Crest. (*Id.* ¶ 36). Sternberger never received any payment for the work she performed for Defendants. (*Id.* ¶ 37).

Sternberger subsequently filed a five-count Complaint (Doc. 1) against Defendants, including: (1) Sex Discrimination in violation of Title VII, 42 U.S.C. § 2000e-2(a)(1) (*id.* ¶ 39); (2) Retaliation in violation of Title VII, 42 U.S.C. §§ 2003e-3(a) (*id.* ¶¶ 53–54); (3) Intentional Infliction of Emotional Distress in violation of Arizona law (*id.* ¶¶ 62–64); (4) Failure to pay wages to which Sternberger is entitled, in violation of A.R.S. § 23-355 (*id.* ¶¶ 66, 68); and (5) a request for declaratory relief pursuant to the Declaratory Judgment Act (the "Act"), 28 U.S.C. §§ 2201, et seq. (*Id.* ¶¶ 72–73).

**II. MOTION TO DISMISS**

The Court first addresses Mr. Gilleland's Motion to Dismiss (Doc. 10 at 11–12). Although Mr. Gilleland failed to state the specific legal basis on which he filed his motion, it appears from the pleading that Mr. Gilleland asserts that Sternberger failed "to state a claim for which relief may be granted" pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).

**A. Legal Standard**

To survive a Rule 12(b)(6) motion for failure to state a claim, a complaint must meet the requirements of Rule 8(a)(2). Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief," so that the defendant has "fair

notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Also, a complaint must contain sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although a complaint attacked for failure to state a claim does not need detailed factual allegations, the pleader's obligation to provide the grounds for relief requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). Rule 8(a)(2) "requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Id.* (citing 5 C. Wright & A. Miller, Federal Practice and Procedure §1202, pp. 94, 95 (3d ed. 2004)). Thus, Rule 8's pleading standard demands more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (2009) (citing *Twombly*, 550 U.S. at 555).

In deciding a motion to dismiss, the Court must construe the facts alleged in the complaint in the light most favorable to the drafter of the complaint and must accept all well-pleaded factual allegations as true. *Shwarz*, 234 F.3d at 435. Nonetheless, the Court does not have to accept as true a legal conclusion couched as a factual allegation. *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

**B.     Analysis**

Mr. Gilleland argues that all counts in Sternberger's claim should be dismissed because they have been filed without merit and consist of "absolutely untrue fabrications." (Doc. 10 at 11). Mr. Gilleland also argues that the timeline of the events alleged in Sternberger's Complaint is inconsistent, proving the inaccuracy of the claims. (*Id.*). Additionally, Mr. Gilleland presents along with the Motion to Dismiss several documents that he claims refute the facts alleged by Sternberger. (*Id.* at 13−52). Mr.

Gilleland contends that these documents controvert Sternberger's allegations regarding the nature of her employment at Golden Crest, the occurrence of any sexual harassment while she worked there, and the extent of any investigation conducted or remedy implemented by the company. (*Id.* at 11–12). Sternberger argues in response that the Court should not consider Mr. Gilleland's factual disputes or documentary evidence because dismissal under Rule 12(b)(6) allows only consideration of the relevant pleadings. (Doc. 12 at 5). Sternberger also objects to the Court transforming the instant Motion to Dismiss into a motion for summary judgment and consideration of the submitted extrinsic evidence in that context. (*Id.* at 2 n.2). Sternberger argues that such actions would be inappropriate because the documents submitted by Mr. Gilleland lack foundation and Sternberger has not yet been granted opportunity to discover and present all relative material. (*Id.*).

### 1. Consideration of Extrinsic Evidence and Possible Conversion of the Motion to Dismiss into a Motion for Summary Judgment

As a preliminary matter, the Court first addresses whether it will consider evidence extrinsic to the pleadings and convert Mr. Gilleland's Motion to Dismiss into a motion for summary judgment pursuant to Rule 12(d). Generally, a court may not consider evidence beyond the plaintiff's complaint in connection with a motion to dismiss, subject only to specific exceptions. *See, e.g.*, *CPI Advanced, Inc. v. Kong Byung Woo Comm. Ind., Co.*, 135 F. App'x 81, 82–83 (9th Cir. 2005); *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1990). Rule 12(d) addresses the procedural requirements of one such exception:

> If, on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Fed. R. Civ. P. 12(d). It is within the Courts discretion whether to consider the extrinsic evidence and convert the motion to dismiss into a motion for summary judgment pursuant to Rule 12(d), or to merely exclude the evidence. *Hamilton Materials, Inc. v.*

*Dow Chem. Corp.*, 494 F.3d 1203, 1207 (9th Cir. 2007) (citing *Portland Retail Druggists Ass'n v. Kaiser Found. Health Plan*, 662 F.2d 641, 645 (9th Cir. 1981)).

Although much of Mr. Gilleland's argument consists of factual disputes more appropriate for a motion for summary judgment (Doc. 10 at 11−12), it would be premature to convert the Motion to Dismiss into a motion for summary judgment at this point in the proceedings. The record discloses no discovery conducted by either party since Sternberger filed the Complaint. Also, Sternberger has not yet been "given reasonable opportunity to present all material that is pertinent to the motion." *See* Fed. R. Civ. P. 12(d). Given the nature of the allegations in the complaint and the facts disputed by Mr. Gilleland, providing the parties a reasonable opportunity to present all relevant material necessarily includes giving the parties the chance to engage in discovery. Thus, the Court will not consider the extrinsic evidence proffered by Mr. Gilleland and declines to convert the Motion to Dismiss into a motion for summary judgment.

### 2.     Consideration of the Facts Alleged in the Complaint

Because Mr. Gilleland's motion remains governed by Rule 12(b)(6), the Court proceeds assuming the facts alleged in Sternberger's Complaint are true and disregards any of Mr. Gilleland's contentions to the contrary. *See, e.g.*, *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001) ("[F]actual challenges to a plaintiff's complaint have no bearing on the legal sufficiency of the allegations under Rule 12(b)(6)."). However, the Court may still consider any internal discrepancies or factual conflicts it finds within Sternberger's complaint that undercut its plausibility. *See, e.g.*, *Maloney v. Scottsdale Ins. Co.*, 256 F. App'x 29, 31−32 (9th Cir. 2007) (finding that a complaint failed to state a claim upon which relief could be granted based upon factually inconsistent allegations in a complaint that were not pleaded in the alternative, but incorporated into each cause of action). The Court, therefore, considers Mr. Gilleland's challenge to Sternberger's alleged timeline of events insofar as any factual inconsistencies are noticeable by looking solely within the Complaint.

Mr. Gilleland specifically points out to the Court that Sternberger claims to have

1 been hired by Golden Crest on or about April 16, 2013, and fired from the company on or about April 22, 2013. (Doc. 10 at 12; Compl., Doc. 1 ¶¶ 14, 36). Mr. Gilleland also points out that Sternberger alleges that she suffered harassment during her first week at Golden Crest, she was asked to stay away from work for two days during an investigation into the harassment, and she subsequently continued working for Golden Crest for an additional two weeks before being fired. (Doc. 10 at 12; Compl., Doc. 1 ¶¶ 18, 26, 32). Mr. Gilleland argues that such events could not have transpired in the seven-day time frame described by Sternberger. (Doc. 10 at 12).

However, reviewing the Complaint in the light most favorable to Sternberger, the Court finds that the possible inconsistency in the timeline does not prevent the Court from taking all the alleged facts as true. Sternberger uses the phrase "on or about" when referring to the alleged dates of her hiring and firing. (Compl., Doc. 1 ¶¶ 14, 36). This allows the Court to consider that the hiring may have occurred earlier than April 16, 2013, and that the firing may have occurred later April 22, 2013. The exact days the events alleged in the Complaint occurred are not determinative to the plausibility of the claims in this case. The facts alleged also offer sufficient approximation of the dates to provide Defendants with "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. The Court therefore assumes that all of the facts alleged in Sternberger's Complaint are true for the purposes of considering Mr. Gilleland's Motion to Dismiss.

### 3. The Five Claims in the Complaint

Mr. Gilleland does not present any additional arguments as to why the Court should dismiss Sternberger's five claims. However, pursuant to Rule 12(b)(6), the Court will still review Sternberger's claims to determine whether they contain sufficient factual matter, when accepted as true, to state a claim to relief that is "plausible on its face." *See Iqbal*, 556 U.S. at 678.

#### a. Count I: Sex Discrimination

Sternberger's first cause of action alleges that Defendants discriminated against

- 7 -

Sternberger in the terms of her employment on the basis of her sex in violation of Title VII of the Civil Rights Act of 1964, through Gates and Defendants creating a hostile work environment. (Compl., Doc. 1 ¶¶ 39–46). Title VII prohibits employment discrimination on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a). To prevail on a Title VII claim, the plaintiff must prove that an adverse employment action was taken "because of" unlawful discrimination. *Costa v. Desert Palace, Inc.*, 299 F.3d 838, 857 (9th Cir. 2002). Title VII's general prohibition against workplace discrimination extends to harassment claims. *See, e.g.*, *Faragher v. City of Boca Raton*, 524 U.S. 775, 786; *Manatt v. Bank of America*, 339 F.3d 792, 798 (9th Cir. 2003); *Fuller v. City of Oakland, Cal.*, 47 F.3d 1522, 1527 (9th Cir. 1995).

To prevail on a hostile workplace claim based on either race or sex, a plaintiff must show: "(1) that he was subjected to verbal or physical conduct of a racial or sexual nature; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment." *Gregory v. Widnall*, 153 F.3d 1071, 1074 (9th Cir. 1998). The work environment must be perceived as both subjectively and objectively abusive. *Fuller*, 47 F.3d at 1527. "Whether the workplace is objectively hostile must be determined from the perspective of a reasonable person with the same fundamental characteristics." *Id.* In determining whether a work environment is sufficiently hostile or abusive to support a claim, the Court should look at all the circumstances; including, the frequency of the discriminatory conduct, the severity of the conduct, whether the conduct is physically threatening or humiliating; and whether the conduct unreasonably interferes with employee's work performance. *Faragher*, 524 U.S. at 787–88.

Sternberger alleges facts sufficient to satisfy the first two elements of a sexually based hostile workplace claim: Gates, Sternberger's immediate supervisor, subjected Sternberger to unwelcome sexual advances and statements, including indications that he wished to have sexual intercourse with her.[2] (Compl., Doc. 1 ¶¶ 18–19). As for the third

---

[2] "An employer is vicariously liable for actionable discrimination caused by a

1  element, Sternberger alleges that the unwanted harassment began during her first week,
2  occurred daily, and continued throughout the duration of her employment with Golden
3  Crest (*Id.*). Although Sternberger does not allege any physical threats, the Court finds that
4  a reasonable woman would find such conduct humiliating and such an environment
5  hostile. Thus, the Court finds that Sternberger alleges conduct that is sufficiently severe
6  and abusive—from not only her view, but also from an objective perspective—to satisfy
7  the third element of a hostile workplace claim by. Hence, the Court finds that Sternberger
8  states a Title VII sexually hostile workplace claim. Accordingly, the Court denies the
9  Motion to Dismiss with respect to Count I.

### b. Count II: Retaliation

Sternberger's second cause of action alleges that Defendants violated Title VII when they retaliated against her for opposing practices made unlawful by the statute. (Compl., Doc. 1 ¶¶ 53–57). Title VII prohibits an employer from "discriminat[ing] against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a).

Title VII retaliation claims "require the plaintiff to prove that the employer acted with conscious intent to discriminate." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 805–06 (1973); *see also Yartzoff v. Thomas*, 809 F.2d 1371, 1375 (9th Cir. 1987) (citing *Ruggles v. Cal. Polytechnic State Univ.*, 797 F.2d 782, 784 (9th Cir. 1986)) (The *McDonnell Douglas* framework and allocation of proof that governs disparate treatment claims also governs retaliation claims.). Specifically, the plaintiff must show: (1) engagement in a protected activity; (2) an adverse employment action; and (3) a causal link between the two. *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000).

Sternberger alleges facts sufficient to satisfy the first two elements: reporting perceived sex-based discrimination is a protected activity; and Defendants' suspending Sternberger, sending her home early, and terminating her are all adverse employment

---

supervisor, but subject to an affirmative defense looking to the reasonableness of the employer's conduct as well as that of the plaintiff victim." *Faragher*, 524 U.S. at 775. At the pleading stage, the Court does not concern itself with potential affirmative defenses.

- 9 -

1 actions. *See, e.g.*, *Reszetylo v. Morgan Stanley Dean Witter & Co.*, 84 F. App'x 822, 824 (9th Cir. 2003) (complaining about perceived sex-based discrimination is a protected activity for purposes of Title VII). Sternberger also alleges facts sufficient to satisfy the third element of causation: Defendants immediately suspended her for two days as a direct result of her complaint of the harassment through the company website (Compl., Doc. 1 ¶¶ 23−27); and Defendants repeatedly sent her home early because of her refusal to sign a waiver of liability for the harassment and fired her soon thereafter (*Id.* ¶¶ 29−36). Thus, the Court finds that Sternberger states a Title VII retaliation claim. Accordingly, the Court denies the Motion to Dismiss with respect to Count II.

### c. Count III: Intentional Infliction of Emotional Distress

Sternberger's third cause of action claims that Defendants intended to and did cause Sternberger emotional distress in violation of Arizona law. (Compl., Doc. 1, ¶¶ 61−64). A claim for intentional infliction of emotional distress under Arizona law requires: (1) "the conduct by defendant must be extreme or outrageous"; (2) "the defendant must either intend to cause emotional distress or recklessly disregard the near certainty that such distress will result from his conduct"; and (3) "severe emotional distress must indeed occur as a result of defendant's conduct. *Mintz v. Bell Atl. Sys. Leasing Int'l, Inc.*, 905 P.2d 559, 562–63 (Ariz. Ct. App. 1995) (internal citations and quotations omitted).

To meet the first element of the cause of action, "[a] plaintiff must show that the defendant's acts were so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Id.* at 563 (internal citations and quotations omitted). "[T]he extreme and outrageous character of conduct may arise from an abuse by the actor of a position, or a relation with the other, which gives him actual or apparent authority over the other, or power to affect his interest." *Coffin v. Safeway, Inc.*, 323 F. Supp. 2d 997, 1003 (D. Ariz. 2004) (quoting Restatement (Second) of Torts § 46 cmt. e). "Because the terms 'outrageous conduct' and 'severe emotional distress' evade

precise legal definition, a case-by-case analysis is necessary." *Id.* (citing *Lucchesi v. Stimmell*, 716 P.2d 1013, 1016 (Ariz. 1986)).

"It is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress." *Mintz*, 905 P.2d at 564 (quoting *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir. 1988)). However, when a company receives complaints that one employee is sexually harassing another and the company "utterly fails to investigate or remedy the situation," liability for intentional infliction of emotional distress "typically attaches." *Craig v. M & O Agencies, Inc.*, 496 F.3d 1047, 1059 (9th Cir. 2007) (citing *Ford v. Revlon, Inc.*, 734 P.2d 580, 585−86 (Ariz. 1987); *Smith v. Am. Express Travel Related Servs. Co., Inc.*, 876 P.2d 1166, 1173−74 (Ariz. Ct. App. 1994)); see also *Thorp v. Home Health Agency-Ariz., Inc.*, 941 F. Supp. 2d 1138, 1141−42 (D. Ariz. 2013).

In *Craig*, the plaintiff filed sexual harassment and intentional emotional distress claims against her former employer after her immediate supervisor repeatedly sexually propositioned her inside and outside the workplace over several months and forcefully kissed her after following her into a public women's restroom. 496 F.3d at 1051−52. The company attempted to investigate and rectify the issue but the plaintiff still suffered some negative repercussions in her interactions with her harasser afterward and eventually quit. *Id.* at 1052−53. Upon review, the court affirmed the defendant employer's motion for summary judgment on the claim of intentional infliction of emotional distress, but in so doing reasoned that the employer "did not abdicate its duty to investigate and take remedial measures" when the harassment was reported. *Id.* at 1059−61.

In contrast, the defendant employer in *Revlon* did not sufficiently investigate or remedy complaints of sexual harassment: a failure the court found constituted extreme and outrageous conduct. 734 P.2d at 585. The plaintiff in *Revlon* filed sexual harassment and intentional infliction of emotional distress claims against the corporation she worked for and its manager after her supervisor made repeated graphic sexual remarks to her,

1 sometimes in front of coworkers, and once physically accosted her in an aggressively
2 sexual manner. *Id.* at 581–82. The plaintiff made many complaints to various officials
3 within the corporation, many of whom had authority to take remedial steps, but they did
4 nothing in response for several months. *Id.* at 582–83. The defendant employer did not
5 censure the supervisor until approximately a year after the assault and did not fire him
6 until several months after that. *Id.* The court affirmed the jury's finding of intentional
7 infliction of emotional distress against the corporation, stating that "Revlon's reckless
8 disregard of [the supervisor's] conduct," which it found to be extreme and outrageous,
9 "made it nearly certain that such emotional distress would . . . occur." *Id.* at 585.

10 The court in *Thorp* made a similar finding regarding an employer defendant's
11 alleged lack of action in response to claims of religious discrimination and sexual
12 harassment. 941 F. Supp. 2d at 1142. In that case, the plaintiff employee alleged that his
13 direct supervisor, the president and a director of the defendant employer, frequently made
14 derogatory and offensive comments about the plaintiff's religion and moral stances, made
15 graphic and crude sexual comments, and provided less favorable working conditions to
16 the plaintiff based on plaintiff's religion. *Id.* at 1141–42. The plaintiff alleged that this
17 conduct started almost immediately after he began working for the defendant employer
18 and continued until he quit as result of the harassment approximately three months later.
19 *Id.* The plaintiff also alleged that he reported the comments to the human resources and
20 an administrator of the defendant employer, but that they merely advised the employee to
21 stay out of the supervisor's way or that the supervisor did not intend to harass anyone. *Id.*
22 The court in *Thorp* held that dismissal of the intentional infliction of emotional distress
23 claim was inappropriate because reasonable minds could differ as to whether the
24 defendant employer's conduct, including inaction in the face of multiple complaints, was
25 sufficiently extreme and outrageous. *Id.* at 1142.

26 Here, the Court similarly finds that reasonable minds could differ as to whether
27 Defendants' alleged conduct is sufficiently extreme and outrageous to sustain a claim for
28 intentional infliction of emotional distress. See *Id.*; *Nelson v. Phx. Resort Corp.*,

181 Ariz. 188, 888 P.2d 1375, 1386 (Ariz. Ct. App. 1994). Although Defendants claimed to launch an investigation into Sternberger's complaint, Sternberger's allegations reflect that Defendants neither took such an investigation seriously, nor made any attempt at a remedy. This conduct is easily distinguishable from the actions of the employer defendant in *Craig*, who made legitimate attempts to investigate and remedy the harassment complaints made by the plaintiff in that case. Furthermore, although the nature of the underlying sexual harassment here is less grievous in nature and occurred over a shorter span of time than the harassment alleged in *Revlon* and *Thorp*, Defendant's alleged response to the harassment complaints is arguably more extreme and outrageous than the respective responses of the defendant employers in those cases. In *Revlon* and *Thorp*, the defendant employers allegedly ignored the harassment complaints, allowing the harassment to continue unhindered. In contrast, here Defendants not only allegedly failed to remedy Sternberger's complaints, but also laughed at and derided Sternberger for making the complaints, attempted to cajole her into signing a liability waiver, and retaliated through a suspension, sending her home early, and ultimately terminating her. Therefore, Court finds that Sternberger's allegations satisfy the first element of a claim for intentional infliction of emotional distress: extreme and outrageous conduct by the defendants.

The Court also finds that Sternberger's complaint plausibly claims a violation of the second and third elements of intentional infliction emotional distress under Arizona law. Second, Defendants acted with at least reckless disregard of the near certainty that emotional distress would afflict Sternberger when Ms. Gilleland allegedly laughed at Sternberger's complaints and when Defendants suspended and eventually fired Sternberger for seeking protection from the harassment. Third, Sternberger alleges that she suffered mental and "emotional distress, pain and suffering, anger, depression, anxiety, humiliation and embarrassment" as a result of Golden Crest's actions. Thus, the Court finds that Sternberger states a claim of intentional infliction of emotional distress. Accordingly, the Court denies the Motion to Dismiss with respect to Count III.

### d. Count IV: Nonpayment of Wages

Sternberger claims that Defendants violated A.R.S. § 23-355 by failing to compensate Sternberger for any of the work she did for Defendants. The statute states, in pertinent part, that "if an employer . . . fails to pay wages due any employee, the employee may recover in a civil action against an employer or former employer an amount that is treble the amount of the unpaid wages." *See* A.R.S. § 23-355. In this context, "wages" refers to "nondiscretionary compensation due an employee in return for labor or services rendered by an employee for which the employee has a reasonable expectation to be paid whether determined by a time, task, piece, commission or other method of calculation." A.R.S. § 23-350. Sternberger alleges that Defendants hired her as a Customer Service Representative and agreed to pay her $200.00 per week plus commission in the amount of $50.00 for each client she signed. (Compl., Doc. 1 ¶¶ 14−15). Sternberger does not claim that she qualified for any commissions by signing any clients. (*Id.* ¶¶ 14−37). However, Sternberger does allege that, after working at least several full days and several partial days for Defendants in April, 2013, Defendants did not pay her any compensation. (*Id.* ¶¶ 18, 28, 32−33, 37). Thus, the Court finds that Sternberger states a claim for nonpayment of wages. Accordingly, the Court denies the Motion to Dismiss with respect to Count IV.

### e. Count V: Request for Declaratory Judgment

As Count V, Sternberger requests that the Court provide declaratory relief pursuant to the Declaratory Judgment Act (the "Act"), 28 U.S.C. §§ 2201, *et seq.* (Compl., Doc. 1 ¶¶ 71−75). The eighteen declarations Sternberger seeks here are essentially recitations of the facts and legal conclusions alleged in other portions of her Complaint. For example, Sternberger requests that the Court declare that "Plaintiff engaged in protected conduct when she reported improper sexual harassment and gender-based discrimination to Defendants." (*Id.* ¶ 73). In another example, Sternberger requests that the Court declare that "Plaintiff is entitled to damages for Defendant's extreme and outrageous conduct causing her emotional distress." (*Id.*).

The pertinent portion of 28 U.S.C. § 2201 states:

> In a case of actual controversy within its jurisdiction . . . , any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201(a). The purpose of the Act is to "permit actual controversies to be settled *before they ripen into violations of the law . . . .*" 10B Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 2751 (3d ed. 2014) (emphasis added). The Act "gives a means by which rights and obligations may be adjudicated in cases involving an actual controversy that has not reached the stage at which either party may seek a coercive remedy and in cases in which a party who could sue for coercive relief has not yet done so." (*Id.*).

The Court finds that Sternberger, here, improperly seeks declarations on the ultimate issues in this case by couching her request for such relief as a separate claim (Count V). Such relief does not fall within the purview of section 2201 because the declarations Sternberger seeks from the Court pertain to alleged violations of the law that have already ripened into a justiciable controversy—the very controversy she is presently litigating. By requesting such declarations, Sternberger seeks to have the Court supplant the fact-finding of the jury with its own declarations. Thus, the Court finds that Sternberger does not properly state a claim for declaratory relief pursuant to 28 U.S.C. § 2201. However, to the extent that Sternberger's Complaint *may* state such a claim, the Court now considers whether to entertain the claim.

It is at the discretion of a district court whether to entertain a suit seeking declaratory judgment. *Publ. Affairs Assocs., Inc. v. Rickover,* 369 U.S. 111, 112 (1962) (per curiam) (The Declaratory Judgment Act "gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so."). However, such discretion is not without limit; "a district court cannot decline to entertain such an action as a matter of whim or personal disinclination." *Id.* "The two principal criteria guiding the policy in favor of rendering declaratory judgments are (1) when the judgment will

1  serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when
2  it will terminate and afford relief from the uncertainty, insecurity, and controversy giving
3  rise to the proceeding." *McGraw-Edison Co. v. Preformed Line Prods. Co.*, 362 F.2d
4  339, 342 (9th Cir. 1966) (quoting Edwin Montefiore Borchard, *Declaratory Judgments*
5  299 (2d ed. 1941)).

6        In reviewing the facts of this case in a light most favorable to Sternberger, the
7  Court finds that Sternberger's declaratory judgments claim does not promote any of the
8  purposes of the Declaratory Judgment Act. There is no useful purpose in entertaining this
9  claim because the actual controversy here has already reached the stage at which
10 Sternberger may seek a coercive remedy, as evidenced by the other claims in her
11 Complaint. Furthermore, Sternberger alleges no facts that plausibly indicate she stands to
12 gain relief from uncertainty, insecurity, or the threat of other impending litigation by
13 having the Court rule in her favor on this additional count. Accordingly, pursuant to
14 28 U.S.C. § 2201, the Court exercises its discretion to refuse to consider Sternberger's
15 claim for declaratory relief and grants the Motion to Dismiss with respect to Count V.

16       **C.**    **Plaintiff's Request for Attorneys' Fees and Costs**

17       Finally, Sternberger requests that the Court award her costs and attorneys' fees
18 incurred in crafting the response because the motion to dismiss is futile, meritless, and
19 without legal basis, and because Mr. Gilleland ignored the standards and rules required
20 by the Court. (Doc. 12 at 7). Plaintiff does not cite to any legal authority for this
21 proposition. (*Id.*). Under the "American Rule," parties are responsible for bearing the
22 costs of their own attorneys' fees. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*,
23 421 U.S. 240, 247 (1975). Accordingly, courts generally will not award attorneys' fees
24 unless statutory authority explicitly so provides. *Key Tronic Corp. v. United States*,
25 511 U.S. 809, 814–15 (1994). However, under the "bad faith exception" to this rule
26 courts may assess an attorney fee sanction without such statutory authority, but only in
27 "narrowly defined circumstances." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 765
28 (1980).

"The 'bad faith' exception provides for the awarding of attorneys' fees when the [unsuccessful] party has acted vexatiously or oppressively, and the rationale underlying the exception is therefore punitive." *Dir., Office of Workers' Comp. Programs, U.S. Dep't of Labor v. Robertson*, 625 F.2d 873, 879 (9th Cir. 1980) (citing *Hall v. Cole*, 412 U.S. 1, 5 (1973); *Reiser v. Del Monte Props. Co.*, 605 F.2d 1135, 1137 (9th Cir. 1979)). The exception must be applied with restraint and discretion, only "against counsel who willfully abuse judicial processes," *Roadway*, 447 U.S. at 764. Courts should impose it only "in exceptional cases and for dominating reasons of justice," *Ass'n of Flight Attendants, AFL-CIO v. Horizon Air Indus., Inc.*, 976 F.2d 541, 550 (9th Cir. 1992) (*Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.*, 890 F.2d 165, 175 (9th Cir. 1989) (quoting *Dogherra v. Safeway Stores, Inc.*, 679 F.2d 1293, 1298 (9th Cir. 1982)).

The Court finds no willful abuse of the judicial process in Mr. Gilleland's Motion to Dismiss. Nor did Mr. Gilleland act vexatiously or oppressively in filing the motion. Mr. Gilleland, a pro se defendant, filed only a single motion, approximately one page in length, along with his answer to the Complaint. (Doc. 10 at 11−12). Although Mr. Gilleland raises factual disputes in the motion and the answer that the Court cannot consider in evaluating the Complaint, he also legitimately attempts to points out perceived temporal discrepancies within Sternberger's complaint that the Court may consider. Thus, the Court declines to use its discretion to issue an attorney fee sanction under the bad faith exception.

A court may also apply fee sanctions against attorneys or parties who engage in frivolous or vexatious litigation pursuant to 28 U.S.C. § 1927 or Federal Rule of Civil Procedure 11. *See* 28 U.S.C. § 1927 (2012); Fed. R. Civ. P. 11(b)−(c). However, neither of these can serve as grounds for Sternberger's fee request here. Section 1927 does not apply to conduct by non-attorneys such as Mr. Gilleland. *See* 28 U.S.C. § 1927; *F.T.C. v. Alaska Land Leasing, Inc.*, 799 F.2d 507, 510 (9th Cir. 1986). In addition, Sternberger does not comply with the procedural requirements of Rule 11, which provides that a motion for sanctions under Rule 11 "must be made separately from any other motion."

1 Fed. R. Civ. P. 11(c)(2). Here, Sternberger makes her fee request as part of her Response to the Motion to Dismiss. (Doc. 12 at 7). The Court finds no statutory authority that provides for a grant of attorneys' fees here. Accordingly, the Court denies Sternberger's request for attorneys' fees.

### III.  MOTION TO STRIKE

The Court now turns to Sternberger's Motion to Strike (Doc. 20). Sternberger requests the Court to strike the Answer to the Complaint filed on behalf of Golden Crest, a corporation, by Mr. Gilleland because Mr. Gilleland is not admitted to practice law in the State of Arizona. (Doc. 20 at 1).

Local Rule of Civil Procedure ("Local Rule") 7.2 governs the filing of motions to strike, and provides that "a motion to strike may be filed only if it is authorized by statute or rule . . . or if it seeks to strike any part of a filing or submission on the ground that it is prohibited (or not authorized) by a statute, rule, or court order." LRCiv 7.2(m)(1). Here, Sternberger seeks to strike the Answer filed on behalf of Golden Crest on the ground that it violates Arizona Supreme Court Rules. (Doc. 20 at 1). Thus, the Court finds that Sternberger's Motion to Strike is procedurally proper.

"It is a longstanding rule that '[c]orporations and other unincorporated associations must appear in court through an attorney.'" *D-Beam Ltd. P'ship v. Roller Derby Skates, Inc.*, 366 F.3d 972, 973–74 (9th Cir. 2004) (quoting *Licht v. Am. W. Airlines (In re Am. W. Airlines)*, 40 F.3d 1058, 1059 (9th Cir. 1994)); *see also United States v. High Country Broad. Co.*, 3 F.3d 1244, 1245 (9th Cir. 1993) (holding that the president and sole shareholder of a corporation could not intervene *pro se* to get around the requirement that the corporation be represented by counsel).

Arizona Supreme Court Rule 31 also states, in pertinent part, that "no person shall practice law in this state or represent in any way that he or she may practice law in this state unless the person is an active member of the state bar." *See* Ariz. S. Ct. R. 31(b). Although the rule provides for several exceptions, it does not allow for a shareholder, employee, officer, or successor at interest of an operating or dissolved business entity, to

represent that entity in this Court in an action for discrimination. *See* Ariz. S. Ct. R. 31(d); *see also State v. Eazy Bail Bonds*, 229 P.3d 239, 241 (Ariz. Ct. App. 2010) (holding that the president of bail bond company who appeared as a representative for bail bond companies in bond forfeiture hearings, but who was not a member of the state bar, was not permitted to represent the companies in court, and her conduct was prohibited by court rules).

Because Mr. Gilleland is not a licensed attorney admitted to practice law in the State of Arizona, he may not represent Golden Crest in this Court. Accordingly, the Court grants Sternberger's Motion to Strike Golden Crest's Answer (Doc. 15) to the Compliant.

## IV.	CONCLUSION

Based on the foregoing,

**IT IS ORDERED** granting in part and denying in part Defendants' Motion to Dismiss (Doc. 10). Count Five is dismissed with prejudice. The Motion is denied in all other respects.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Strike (Doc. 20) Defendant Golden Crest's Answer (Doc. 15) to the Complaint is granted. The Clerk of the Court shall strike Golden Crest's Answer (Doc. 15).

Dated this 1st day of August, 2014.

*James A. Teilborg*
Senior United States District Judge